UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X

CHUNYU JEAN WANG,

               Plaintiff,

-against-

ALEX VAHLDIECK, Shield No. 12022, individually and
in his official capacity as a New York City Policy Officer

               Defendant.
----------------------------------------------------------------- X

09-CV-3783 (ARR) (VVP)

NOT FOR PRINT OR
ELECTRONIC
PUBLICATION

OPINION & ORDER

ROSS, United States District Judge:

Plaintiff, Chunyu Jean Wang, brings this action pursuant to 42 U.S.C. § 1983 against defendant Police Officer Alex Vahldieck of the New York City Police Department ("NYPD"). She seeks to hold defendant liable for violations of her constitutional rights in connection with her stop, arrest and subsequent detention in Flushing, New York, on September 27, 2006. Now before the court is defendant's motion for summary judgment. For the reasons set forth below, defendant's motion for summary judgment is granted in part and denied in part.

## I. BACKGROUND

The following facts are drawn primarily from the parties' statements pursuant to Local Civil Rule 56.1[1] and plaintiff's deposition testimony. Facts are undisputed except where otherwise noted.

---

[1] Defendant correctly notes that plaintiff—who, though pro se in this case, is an attorney admitted to practice before this court—failed to comply with Local Rule 56.1 which states that "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). Moreover, "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for the purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the

1

On the morning of September 27, 2006, Plaintiff Chunyu Jean Wang was driving her vehicle, a pre-owned Mercury Villager, to her office in Flushing, New York, when she stopped at a traffic light and encountered defendant Police Officer Alex Vahldieck and his partner attending to another vehicle. Defendant's Statement Pursuant to Local Civil Rule 56.1 ("Def. 56.1"), at ¶¶ 3, 4. While the parties agree that Officer Vahldieck approached plaintiff's passenger side window and ordered her to pull over, id. at ¶5, they dispute the nature of this interaction. Plaintiff stated in her deposition that she was "yell[ed] at to pull over," she asked why she was being pulled over, and was told to "'[p]ull over' a second time" without any other explanation. Deposition of Chunyu Jean Wang, March 14, 2011 ("Pl. Dep."), annexed as Pl. Ex., at 49-50. Plaintiff also contends that her front side windows were rolled down at the time, out of the view of the police officers. Id. at 47. Defendant, however, submits that when plaintiff asked why she was being pulled over, he responded that "he believed the tints on her window were too dark." Def. 56.1 at 6.[2] Defendant's account receives substantial support in the record from plaintiff's own prior account in her Notice of Claim, filed with the Comptroller of the City of New York 8 days after the incident, which states in relevant part: "Officer Vahldieck told me to pull over. I asked him why and he said my tints were too dark. I responded that they were not too dark but above the legal limit of 70%." Def. Ex. D.

In any event, plaintiff then drove approximately one or two blocks from the point of the original request, which she believed was the first available portion of the road where she could

---

opposing party." Local Civ. R. 56.1(c) (emphasis added). Here plaintiff's Rule 56.1 statement in opposition asserts some facts and many legal conclusions in seemingly random order and fails to specifically address most of the facts submitted by defendant. A district court, however, "has broad discretion to determine whether to overlook a party's failure to comply with local court rules," and may review the record in determining whether proposed undisputed facts were disputed. Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001); see also Rateau v. City of N.Y., No. 06-CV-4751 (KAM)(CLP), 2009 U.S. Dist. LEXIS 90112, at *2 (E.D.N.Y. Sept. 29, 2009). Accordingly, the court will deem admitted those facts that appear uncontroverted by the admissible record.

[2] Plaintiff alleges that defendant pulled her over because she was an "Asian female."

2

arraigned in Queens County Criminal Court for violation of Penal Law §195.05, obstructing government administration, and Vehicle and Traffic Law § 1102, failure to obey a police officer. Pl. Ex. E. Plaintiff pleaded not guilty at her arraignment and was released on her own recognizance. At no point during her incarceration was plaintiff's vehicle seized or measured for violation of New York tint laws.

Plaintiff testified that she alleges only "mental pain and anguish" from the "trauma of the incident" Pl. Dep., at 76-77. Specifically, plaintiff testified that she "suffered mental anguish . . . [,] pain from my arrest where he handcuffed me . . . [, and] nightmares of – because he touched me and searched me." Id. at 39.

On March 27, 2007, plaintiff initiated a meeting between herself, her attorney and members of Queens County District Attorney's Office to inspect her vehicle and measure the tint level of her front windows. Pl. Dep. at 73-74. The tint meter showed a tint level of .2 (meaning 20% of light could pass through the window) while New York Vehicle and Traffic law requires a reading of .7 or higher. Plaintiff and the district attorney's office then reached a plea agreement, pursuant to which plaintiff pled guilty to VTL § 375.12[3] on March 29, 2011, in connection with the September arrest, in exchange for dropping the failure to obey and obstruction charges. Since purchasing the pre-owned vehicle, plaintiff admitted that she had never had her windows altered. Id. at 46-47.

---

[3] New York VTL § 375.12-a(b) reads: "No person shall operate any motor vehicle upon any public highway, road or street . . . the front windshield of which is composed of, covered by or treated with any material which has a light transmittance of less than seventy percent unless such materials are limited to the uppermost six inches of the windshield; or . . . the side windows of which on either side . . . are composed of, covered by or treated with any material which has a light transmittance of less than seventy percent." The "light transmittance" refers to the percentage of light that passes through the glass and is not otherwise obscured or reflected.

## II. DISCUSSION

Plaintiff's pro se complaint asserts § 1983 claims for false arrest, excessive force, unlawful search and seizure, unconstitutional conditions of confinement, unreasonable detention and unlawful discrimination in deprivation of plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution, as well as state law claims of false arrest and false imprisonment. Defendants have moved for summary judgment on the bases that (1) there was probable cause to arrest plaintiff, (2) plaintiff's subsequent guilty plea bars her claims of false arrest, (3) Officer Vahldieck's use of force against plaintiff and subsequent detention was objectively reasonable, and (4) defendant is entitled to qualified immunity. The court concludes that defendants are entitled to summary judgment on plaintiff's § 1983 claims of false arrest, unlawful search and seizure, unconstitutional conditions of confinedment, unlawful discrimination, and corresponding state law claims of false arrest and false imprisonment. Defendant's motion for summary judgment on plaintiff's claim for excessive force is denied. Although defendant has moved against the complaint in its entirety, their moving papers do not address plaintiff's claim for unreasonable detention. Summary judgment is therefore denied as to this claim.

### A.     Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it

concerns facts that can affect the outcome under the applicable substantive law." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and ellipses omitted)).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003) (internal quotation marks omitted)); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment against it, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). In reviewing the record before it, "the court is required resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997) (citing Anderson, 477 U.S. at 255).

### B. False Arrest

A § 1983 claim for false arrest requires proof of the same four elements as a claim for false arrest under New York law: (1) the defendant intentionally confined plaintiff, (2) plaintiff was conscious of the confinement, (3) plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. See Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003); Harris v. County of Nassau, 581 F.Supp.2d 351, 354-55 (E.D.N.Y. 2008); Broughton v.

State, 37 N.Y.2d 451, 456 (1975). If probable cause exists at the time of arrest, the confinement is privileged. Jocks, 316 F.3d at 135; Martinez v. City of New York, 340 Fed. Appx. 700, 701 (2d Cir. 2009). Thus, the existence of probable cause constitutes a complete defense to a false-arrest claim. Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999).

"[A]n arresting officer's state of mind . . . is irrelevant to the existence of probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004) (citing Whren v. United States, 517 U.S. 806, 812-13 (1996)). Evaluating whether or not probable cause to arrest exists, therefore, is an objective inquiry. See Whren, 517 U.S. at 813 ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.") (quoting Scott v. United States, 436 U.S. 128, 138 (1978)). Moreover, the crime identified by the officer at the time of the arrest—or the booking officer—need not be supported probable cause, as long probable cause to arrest existed. Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006) ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and [] it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of the arrest."). The offense establishing probable cause to <u>arrest</u> need not even be "'closely related to', [or] based on the same conduct as, the offense identified by the arresting officer." Devenpeck, 543 U.S. at 154.

Defendant argues (1) that there is no genuine dispute that Officer Vahldieck had probable cause to arrest plaintiff for having windows tinted beyond the limits of New York Vehicle and Traffic Law and (2) that plaintiff is barred from disputing the existence of probable cause because she pled guilty to VTL § 375.12. Plaintiff responds that she is not barred from making a

claim for false arrest, because the lesser crime to which she pled guilty was not the crime for which she was arrested by defendant—indeed, she maintains, charges of improperly tinted windows were raised only after the fact and were merely a coincidence. The alleged lack of probable cause is bolstered, plaintiff argues, by defendant's failure to use a tint meter—readily available in his cruiser—at the scene of the crime, as well as his failure to seize the offending automobile. Plaintiff's arguments are unavailing.

A "plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested." Cameron v. Fogarty, 806 F.2d 380, 388 (1986); see also, Ostroski v. Town of Southold, 443 F. Supp. 2d 325, 335 (E.D.N.Y. 2006) ("[T]he existence of probable cause as a matter of law as to some of the crimes that [plaintiff] was charged on the day of her arrest legitimized the seizure of her person and her subsequent detention."). "The application of this policy is most appropriate where . . . the conviction resulted from a voluntary plea of guilty." Pouncey v. Ryan, 396 F. Supp. 126, 127 (D. Conn. 1975). Moreover, as here, a claim for false arrest is barred even where the civil rights plaintiff pleaded guilty to a lesser charge pursuant to a plea agreement that dismissed the charges for which plaintiff was arrested. Hope v. City of New York, 2010 WL 331678, at *2 (E.D.N.Y. Jan. 22, 2010) ("A valid prosecution resulting in conviction is conclusive evidence that probable cause existed for an arrest, even if the conviction is the result of a guilty plea to a lesser charge than that for which plaintiff was arrested."); Roundtree v. City of New York, 778 F. Supp. 614, 619-20 (E.D.N.Y. 1991) (holding that guilty plea of disorderly conduct when plaintiff was arrested for possession of cocaine barred § 1983 claim). In this case, plaintiff pled guilty to violating VTL § 375.12 and agreed to pay $ 100 for her conduct occurring September 27, 2006, the date of the incident, in satisfaction of the crimes for which she was arrested and charged. Def. Ex. F. Plaintiff's guilty plea to VTL

§ 375.12, even if different from the charge for which she was arrested, necessarily "precludes recovery under § 1983 for false arrest since it establishes that probable cause existed at the time of the arrest." Allison v. Farrell, NO. 97-CV-2247 (DAB), 2002 WL 88380, at *4 (S.D.N.Y. Jan. 22, 2002); see also McFadden v. New York, No. 10–CV–141 (RRM)(CLP), 2011 WL 6813194, at * 4 (E.D.N.Y. Dec. 28, 2011) ("[T]hat plaintiff was ultimately convicted of a lesser charge than that for which he was arrested has been uniformly rejected by courts in this Circuit as the basis for claims of false arrest and malicious prosecution.").[4]

Plaintiff places considerable weight on the Fifth Circuit case, Atwater v. Lago Vista, 165 F.3d 380, 384 (5th Cir. 1999), for the proposition that an arrest for a minor traffic violation—a non-arrestable offense—may violate the Fourth Amendment. Plaintiff argues therefore that, even if probable cause existed that she was in violation of VTL § 375.12, her arrest for what amounts to merely a minor traffic violation was objectively unreasonable. As defendant correctly points out in reply, plaintiff's reliance is fatally misplaced: the Fifth Circuit panel's decision in Atwater was rejected by the Supreme Court's decision on appeal that states the clear rule to the contrary. See Atwater v. Lago Vista, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); see also

---

[4] The court also notes that plaintiff's account—that Officer Vahldieck could not see her windows and stopped her car for no reason—is disputed by her own previous submissions and highly incredible. Plaintiff testified in her deposition that she had not altered the windows of her car since its purchase, but on March 27, 2007, a tint meter reading found plaintiff's front windows to be in substantial violation of New York law, a fact subsequently confirmed by her guilty plea. In her Notice of Claim, filed just eight days after the incident, plaintiff states that "Officer Vahldieck told me to pull over. I asked him why and he said my tints were too dark. I responded that they were not too dark but above the legal limit." Def. Ex. G. That defendant would have pointed out plaintiff's tinted windows at the time of the arrest without having seen the windows, combined with the fact that subsequent testing revealed that plaintiff's windows were actually tinted well in excess of New York limits, is dubious, if not implausible. Plaintiff's claim would require a jury to conclude that Officer Vahldieck made a lucky—and blind— guess that plaintiff's windows were tinted in violation of New York law. See In re Dana Corp., 574 F.3d 129, 158 (2d Cir. 2009) ("[I]f the factual context renders [the plaintiffs'] claim implausible . . . [the plaintiffs] must come forward with more persuasive evidence to support their claim than would otherwise be necessary.") (quoting Matsushita Elec. Ind. Co. v. Zenith Radio Corp, 475 U.S. 574, 587 (1986)).

United States v. Jenkins, 324 F. Supp. 2d 504, 508 (S.D.N.Y. 2004) ("Probable cause and reasonable suspicion to stop and arrest a driver of a vehicle exist '[w]hen an officer observes a traffic offense – however minor.'") (quoting United States v. Scopo, 19 F.3d 777, 782 (2d Cir. 1994)). Because defendants had probable cause to believe plaintiff violated § 375.12 of the Vehicle and Traffic Law, they were entitled to arrest her. Therefore, plaintiff's false-arrest claim fails. See Sands v. City of New York, No. 04-CV-5275, 2006 WL 2850613, at *4-5 (E.D.N.Y. Oct. 3, 2006) (dismissing false-arrest claim based on custodial arrest for littering).

Plaintiff also alleges state common law claims of false arrest and false imprisonment. "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006); see also Zanghi v. Incorporated Vill. Of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985) ("[A] finding of probable cause will defeat [New York] state tort claims . . . for false imprisonment."). For the reasons set forth above, plaintiff's state law claims for false arrest and false imprisonment are therefore also dismissed.

### C. Excessive Force

Defendant argues that plaintiff cannot establish a claim of excessive force, because any injuries alleged are "de minimis." Even where there injury is not permanent or even severe, however, courts have allowed recovery where the <u>force</u> was excessive. Because the court cannot determine, as a matter of law, that defendant's use of force was not excessive under the circumstances of plaintiff's arrest, summary judgment is not appropriate.

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989) (identifying the Fourth, Eighth, and Fourteenth Amendments as potential bases for an excessive force claim in the appropriate

circumstances). "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Id.; see Lemmo v. McKoy, No. 08-CV-4264, 2011 WL 843974, at *4 (E.D.N.Y. Mar. 8, 2011) (applying Fourth Amendment standard to the use of force in a police precinct after the plaintiff had been arrested but before he was arraigned).

The Fourth Amendment standard, applicable to the present case, is purely objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."); see Nimely v. City of New York, 414 F.3d 381, 390 (2d Cir. 2005). In Graham, the Supreme Court provided guidance on how to apply the Fourth Amendment standard to claims that police officers used excessive force in the course of an arrest or other seizure:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

490 U.S. at 396 (internal quotations and citations omitted). Graham further teaches that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.") (internal quotation marks and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id.

In the present case, it is beyond dispute that Vahldieck was entitled to use "some degree of physical coercion or threat thereof" to effect plaintiff's arrest and to search her. Defendant had probable cause to arrest plaintiff due to the observed traffic violation, and it is axiomatic that some level of coercion is permitted when effectuating an arrest. Plaintiff also admits that she did not pull over immediately after being asked but drove one or two blocks down the road. While plaintiff maintains that she pulled over at the first available safe portion of the road, it is plausible that an officer in defendant's position could have reasonably believed plaintiff was acting evasively and would be difficult to manage going forward. The question for this court is, drawing all inferences in favor of plaintiff, whether it was reasonable under the circumstances for Officer Vahldieck to (1) open plaintiff's car door after she had surrendered to his authority and pulled her out of the car by her hair, and (2) to tightly bind her handcuffs over her repeated objections of pain.

Defendant devotes considerable attention to the extent of plaintiff's injury, and specifically, plaintiff's admission that she suffered no physical injuries that persisted beyond the incident. While some district courts have borrowed from the Eighth Amendment test for

excessiveness to dismiss claims in which an arrestee suffers only de minimis injuries, see Smith v. City of New York, No. 04-CV-3286, 2010 WL 3397683, at *10 (S.D.N.Y. Aug. 27, 2010) (characterizing short-term pain, swelling, and bruising as de minimis), the Second Circuit has held that even minor injuries, including scrapes and bruises, can support an excessive-force claim, Maxwell v. City of New York, 380 F.3d 106, 109-10 (2d Cir. 2004) (reversing the district court's entry of summary of judgment against a plaintiff who had suffered only "minor scrapes, bumps or bruises [that] potentially could occur, often unintended, during any arrest," pain, and post-concussive syndrome); Robinson v. Via, 821 F.2d 913, 923-24 (2d Cir. 1987) (allowing a plaintiff's claim to survive summary judgment where a police officer pushed her against the inside of the door of a car, "yanked" her out, threw her up against the fender, and twisted her arm behind her back, causing only bruising for which she did not seek medical treatment). See generally Lemmo, 2011 WL 843974, at *5-6. In addition, the Second Circuit has approved of the award of nominal damages for the use of excessive force in violation of the Fourth Amendment where no compensable injury can be proven. Amato v. City of Saratoga Springs, 170 F.3d 311, 317 (2d Cir. 1999) ("While the main purpose of a § 1983 damages award is to compensate individuals for injuries caused by the deprivation of constitutional rights, a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury."). Thus, while the extent of plaintiff's injury may certainly be "probative of the amount and type of the force actually used by the arresting officers, and that in turn is likely to reflect on the reasonableness of that force," it is not dispositive of the instant motion for summary judgment. See Zhao v. City of New York, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009).

Drawing all inferences in favor of plaintiff, a reasonable jury could find that dragging Ms. Wang out of her car by her hair after she had already stopped and pulled over is objectively unreasonable. See, e.g., Pierre-Antoine v. City of New York, No. 04-CV-6987 (GEL), 2006 WL 1292076, at *4 (S.D.N.Y. May 9, 2006) (holding that the use of force against an already subdued individual would constitute excessive force). In this case, the evidence "does not reveal any severe injury; such evidence does not, however, entitle [defendant] to judgment as a matter of law." Pierre-Antoine, 2006 WL 1292076, at *5 (S.D.N.Y. May 9, 2006). It will be the task of the jury to weigh plaintiff's injury as evidence of the force used by Officer Vahldieck.

To the extent plaintiff bases her excessive force claim on unreasonably tight handcuffs, however, this claim must be dismissed. Plaintiff contends that Officer Vahldieck handcuffed her too tightly and failed to loosen her restraints despite her complaints. A specific body of case law has developed in district courts in this Circuit when evaluating excessive force claims due to tight handcuffing. The court must look to whether "1) the handcuffs were unreasonably tight; 2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." Lynch v. City of Mount Vernon, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008). Of course, "to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out." Esmont v. City of New York, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005). Plaintiff's deposition testimony establishes the first two factors. First, plaintiff contends that the "handcuffs were extremely tight," were "digging into [her wrist]" and that she "was shrieking in pain." Pl. Dep. at 54. Plaintiff also complained that her handcuffs were too tight when they were immediately applied, and continued to "shriek" in pain during the drive to the precinct. Id. at 58-59. Plaintiff, however, sought no medical attention, and admitted no continuing physical injury beyond the pain and discomfort while the handcuffs were applied. "There is a consensus

among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes injury beyond temporary discomfort." Lynch, 567 F. Supp. 2d at 468 (collecting cases). Because there is no evidence that the tight handcuffing caused any actual physical injury, and plaintiff alleges no lasting physical injury, defendant's tight handcuffing alone does not constitute excessive force.

### D. Conditions of Confinement

Plaintiff's complaint also challenges the conditions of her confinement at the 109th precinct. When evaluating a claim for unconstitutional conditions of confinement, the court looks to whether the "challenged conditions amount to 'punishment' without due process of law. Cruz v. Reiner, 11 Civ. 2131 (BMC)(SMG), 2011 U.S. Dist. LEXIS 14992, at *13 (E.D.N.Y. Dec. 13, 2011) (citing Bell v. Wolfish, 441 U.S. 520, 435 (1979)); see also United States v. Walsh, 194 F.3d 37, 48 (2d Cir. 1999) (holding that Eighth and Fourteenth Amendment tests that apply to the claims of pre-trial detainees and sentenced convicts, respectively, are essentially the same). This test includes both a subjective component, focusing on the defendant's motive for his conduct, and an objective component, focusing on the conduct's effect on the plaintiff. Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009) (citing Hudson, 503 U.S. at 7-8). The subjective component turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. The objective component turns on whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation" in light of "contemporary standards of decency." Id. at 8 (internal quotation marks and citations omitted). Although a prison official's use of force to cause harm maliciously and sadistically will always violate contemporary standards of decency, whether or not a significant injury is evident, de minimis uses of physical force do not

constitute constitutional violations, "provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotation marks and citations omitted).

For instance, a plaintiff may recover for unconstitutional conditions of confinement due to chronic or substantial exposure to waste and unsanitary conditions. Gaston v. Coughlin, 249 F.3d 156, 165 (2d Cir. 2001) (reversing dismissal of Eighth Amendment claim where plaintiff alleged that for "several consecutive days . . . [plaintiffs'] cell was filled with human feces, urine and sewage water"); LaReau v. MacDougall, 473 F.2d 974, 977-79 (2d Cir. 1972) (holding that five days in small cell where only facility for disposing of waste was grate-covered hole in corner of the cell stated an Eighth Amendment claim). Where prison conditions are merely unpleasant, however, a plaintiff's § 1983 claim must be dismissed. For example, temporary or limited exposure to unsanitary conditions fails to state an injury of constitutional magnitude. See, e.g., Ortiz v. Dep't of Corr., 08 Civ. 2195 (RJS)(HBP), 2011 U.S. Dist. LEXIS 71897 (S.D.N.Y. April 29, 2011) (dismissing claim where plaintiff's exposure to "sewage overflow" lasted less than 24 hours and collecting cases challenging unsanitary conditions of confinement); Evans v. Fogg, 466 F. Supp. 949, 950 (S.D.N.Y. 1979) ("To be kept in a refuse-strewn cell for 24 hours and in a flooded cell (a condition resulting from [plaintiff's] own acts) for two days is a rough experience, but, since neither condition persisted for more than a limited period of time, it cannot be said that the condition amounted to cruel and unusual punishment."). Drawing all inferences in favor of the non-moving party, plaintiff alleges that she was detained for a maximum of six and a half hours in a dirty cell containing urine, cockroaches and used bathroom tissue, in full view of the public, when cleaner cells were available. Such temporary exposure, though perhaps quite unpleasant for Ms. Wang, does not rise to the sort of conduct held

16

"repugnant to the conscience of mankind." Accordingly, plaintiff's claim for unconstitutional conditions of confinement is dismissed.

E. **Unreasonable Detention**

Although defendants have moved against the complaint in its entirety, their moving papers do not address plaintiff's claims for unreasonable detention. Plaintiff alleges in her complaint that "Defendant Vahldieck purposefully delayed the processing of the paper work concerning Mrs. Wang's arrest in order to maximize the amount of time that Mrs. Wang would be incarcerated. This resulted in Mrs. Wang being incarcerated for more than 24 hours." A detention of more than 48 hours before a probable cause hearing is presumptively unreasonable. County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). A detention of fewer than 48 hours may also be unreasonable if it is unreasonably prolonged, for example, "for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." Id.; Bryant, 404 F.3d at 137; cf. Lemmo, 2011 WL 843974, at *6–7 (observing that although a police officer's intentions are not elemental to the *Graham* test of reasonableness, the intentional, gratuitous use of force is usually unreasonable). While plaintiff's detention lasted considerably less than the threshold 48 hours laid out by the Supreme Court in McLaughlin, plaintiff alleges in her complaint that Officer Vahldieck deliberately delayed processing of paper work in order to maximize the length of her detention. As defendant's summary judgment motion does not address this claim, and defendant does not identify undisputed facts precluding plaintiff's claim for unreasonable detention, this claim cannot be dismissed.

F. **Unlawful Search**

Plaintiff also alleges that defendant unlawfully searched her person during the course of her arrest in violation of the Fourth Amendment.

"Among the exceptions to the warrant requirement is a search incident to a lawfully executed arrest." Arizona v. Gant, 129 S.Ct. 1710, 1716 (2009) (citing Weeks v. United States, 232 U.S. 383, 392 (1914)). "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations," and permits a police officer to search incident to an arrest "the arrestee's person and the area 'within his immediate control.'" Id. (quoting Chimel v. California, 395 U.S. 752, 763 (1969). A search of a person incident to an arrest is therefore presumptively reasonable under the Fourth Amendment. See United States v. Robinson, 414 U.S. 218, 235 (1973). Nevertheless, a search incident to a lawfully executed arrest may still violate the Fourth Amendment, if conducted in an otherwise unreasonable manner. For instance, a strip or cavity search of a misdemeanor or minor violation arrestee is likely unlawful absent "reasonable suspicion that the arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics off the arrestee, and/or the circumstances of the arrest." Weber v. Dell, 804 F.2d 796, 802 (2d Cir. 1986). For a simple pat-down search incident to an arrest, however, the arresting officer is not required to believe that "an arrestee in fact had weapons, contraband or evidence on their persons." See Stokes v. City of New York, No 05-CV-0007 (JFB) (MDG), 2007 U.S. Dist. LEXIS 32787, at *43 (E.D.N.Y. May 3, 2007).

Plaintiff alleges that Vahldieck, "touch[ed] her inappropriately under her clothing" during the search incident to arrest. Compl. at ¶ 16. Plaintiff described the nature of the post-arrest search:

Q. Okay. What happened next after you were out of the vehicle?

A. He searched me. He reached into my body and searched me.

* * *

A. When you say he reached into your body can you explain what he did?

Q. Right. Under my shirt and touched me. And no pat downs. You're supposed to only pat but he reached into my body and touched me.

Q. Where did he touch you?

A. My skin.

While the conduct of Officer Vahldieck may be a disputed fact, it is not a material one. Crediting plaintiff's count, at the very most, defendant touched plaintiff's skin on some unspecified portion of her body. It is not surprising, and surely does not rise to a violation of constitutional proportion, that an officer during the course of a manual search incident to an arrest might come into some contact with the arrestee's skin. Nothing in the record provided by plaintiff suggests that she was subjected to anything beyond a standard search incident to an arrest that has been repeatedly upheld as reasonable under the Fourth Amendment. See, e.g.,Wright v. City of Waterbury, 3:07-cv-306(CFD) 2011 U.S. Dist. LEXIS 29666, at *20 (D. Conn. 2011) (dismissing Fourth Amendment claim where female police officer "cupped" male plaintiff's groin area on two occasions during frisk and citing similar cases); Burke v. Cicero Police Dep't, 2010 U.S. Dist. LEXIS 31414 (N.D.N.Y. 2010) (dismissing claim where male defendant "patt[ed] and squeeze[ed]" plaintiff's legs and "breasts on down"), Stokes, 2007 U.S. Dist. LEXIS 32787. Plaintiff's vague allegations that her skin and body were touched by defendant fail to establish the existence of "specific facts showing that there is a genuine issue for trial." LaBounty, 137 F.3d at 73. Because plaintiff was searched pursuant to lawful arrest, and the scope of the search was reasonable, plaintiff's unlawful search claim is dismissed.[5]

---

[5] Plaintiff also claims that she refused to be touched by a male police officer at the time of the search. "Courts,

### G. Equal Protection

Plaintiff also appears to make some claim in her complaint and opposition papers that she was unlawfully discriminated against on the basis of her race and gender as an Asian female. No evidence in the record, other than plaintiff's conclusory assertion that she was stopped by Officer Vahldieck because of her race and gender, supports any claim of selective adverse treatment. See Leclair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980) (holding that in order to make out claim of selective adverse treatment, plaintiff must allege that "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person"). Defendant's Rule 56.1 statement and Officer Vahldieck's deposition testimony states that defendant pulled plaintiff over and arrested her because of her illegally tinted windows and subsequent evasive behavior. Plaintiff fails in response to bring forth any evidence that similarly situated defendants were treated differently or any other evidence suggesting intentional discrimination. Accordingly, plaintiff's equal protection claim is dismissed.

### H. Qualified Immunity

"As a general matter, police officers who violate a plaintiff's constitutional rights are nevertheless entitled to qualified immunity if their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Loria v. Gorman, 306 F.3d 1271, 1282 (2d Cir. 2002) ("Said differently, if the officer's conduct violated a right, we analyze the objective reasonableness of the officer's belief in the

---

however, have repeatedly found that the fact that a pat-down search incident to arrest is conducted by an officer of the opposite sex of the arrestee does not, absent some additional evidence of improper conduct during the search" permit the arrestee to recover. Stokes, 2007 U.S. Dist. LEXIS 32787, at *44 n. 9 (collecting cases).

lawfulness of his actions."). Qualified immunity is "an immunity from suit rather than a mere defense to liability" and "is effectively lost if the case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted). Nevertheless, in the context of excessive force, the Fourth Amendment reasonableness inquiry tends to converge with the qualified immunity reasonableness inquiry. See Cowan v. Breen, 352 F.3d 756, 764 & n.7 (2d Cir. 2003); Lemmo, 2011 WL 843974, at *8. Having determined that plaintiff's claim for excessive force present triable issues of fact, the court likewise concludes that defendants are not entitled to summary judgment on the basis of qualified immunity. Because the court finds that Officer Vahldieck's conduct was otherwise lawful and therefore reasonable with respect to plaintiff's remaining claims, the court finds that Officer Vahldieck is entitled to qualified immunity in the alternative.

### .III. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted with respect to plaintiff's claims of false arrest, unconstitutional conditions of confinement, unreasonable search and seizure, unlawful discrimination, and state law claims of false arrest and false imprisonment, and denied with respect to plaintiff's claim of excessive force.[6]

SO ORDERED.

/S/

_____
Allyne R. Ross
United States District Judge

Dated: January 9, 2012
Brooklyn, New York

---

[6] As indicated, defendant did not move against plaintiff's claim for unreasonable detention.

21